J. Noah Hagey, Esq. (SBN: 262331)
hagey@braunhagey.com
J. Tobias Rowe, Esq. (SBN: 305596)
rowe@braunhagey.com
BRAUNHAGEY & BORDEN LLP
220 Sansome Street, 2nd Floor
San Francisco, CA 94104
Telephone: (415) 599-0210
Facsimile: (415) 276-1808

ATTORNEYS FOR PLAINTIFF
ARCTIC ZERO, INC.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARCTIC ZERO, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ASPEN HILLS, INC., an Iowa Corporation, THOMAS LUNDEEN, an individual, NANCY LUNDEEN, an individual, and DOES 1-25,<br><br>Defendants. | No. 3:17-cv-00459-AJB-JMA<br><br>**FIRST AMENDED COMPLAINT FOR NEGLIGENCE, EXPRESS INDEMNITY, BREACH OF CONTRACT, DECLARATORY RELIEF, AND FRAUDULENT TRANSFER**<br><br>**<u>Jury Trial Demanded</u>** |

1. Plaintiff Arctic Zero, Inc. ("Arctic Zero") brings this First Amended Complaint against Defendant Aspen Hills, Inc. ("Aspen Hills") and Defendants Thomas Lundeen and Nancy Lundeen (collectively, the "Insiders") and alleges, on personal knowledge as to its own actions and on information and belief as to the actions of others, as follows:

## INTRODUCTION

2. This is an action for negligence, express indemnity, breach of contract, and declaratory relief arising out of Defendant Aspen Hills's failure to perform its obligations under an October 1, 2015 Ingredient Supply Agreement with Arctic Zero (the "Agreement").

3. As to Insiders Thomas and Nancy Lundeen, owners of Aspen Hills, Plaintiff seeks relief from fraudulent transfers of hundreds of thousands of dollars made by Aspen Hills to the Insiders at a time when Aspen Hills was insolvent or in the zone of insolvency in an effort to hinder, delay or defraud Plaintiff.

## THE PARTIES

4. Plaintiff Arctic Zero, Inc. is a corporation organized under the laws of the state of Delaware with its principal place of business at 4241 Jutland Drive, San Diego, California.

5. Defendant Aspen Hills, Inc. is a corporation organized under the laws of the state of Iowa with its principal place of business at 830 State Street, Garner, Iowa. On information and belief, Aspen Hills is a corporate alter ego of Defendants Thomas Lundeen and Nancy Lundeen.

6. Defendant Thomas Lundeen is an individual residing in the state of Iowa and, at all times relevant to this Complaint, doing business in the State of California as the President and co-owner of Defendant Aspen Hills.

7. Defendant Nancy Lundeen is an individual residing in the state of Iowa and, at all times relevant to this Complaint, doing business in the State of California as the Secretary, Treasurer, and co-owner of Defendant Aspen Hills.

8. Each Defendant aided and abetted, conspired with, and participated with one another and others in the wrongful acts and course of conduct, or otherwise caused the damages sought herein and are responsible for the acts, occurrences and events alleged in this Complaint.

9. The true names of the defendants sued as Does 1 through 25, inclusive, are unascertained to Plaintiff, who therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. These fictitiously named defendants were involved in the design, implementation, approval, and furtherance of the conduct complained of herein or received benefits from those transactions. These defendants aided and abetted, conspired with, and participated with Defendants and others in the wrongful acts and course of conduct, or otherwise caused the damages sought herein and are responsible for the acts, occurrences and events alleged in this Complaint.

## JURISDICTION AND VENUE

10. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

11. Arctic Zero is a Delaware corporation with its primary place of business in California, while Defendant Aspen Hills is not organized under the laws of, nor has its primary place of business in, either Delaware or California.

12. Accordingly, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332.

13. This Court has personal jurisdiction over Defendant Aspen Hills and venue is proper in this judicial district because Aspen Hills consented to the exclusive jurisdiction and venue of the federal and state courts in San Diego County, California for any court action or proceeding relating to or arising out of the Agreement at issue. *See* Agreement, § 21.

14. Defendant Aspen Hills also purposefully availed itself of the protections of California law by agreeing that California law would govern the Agreement. *See* Agreement, §22.

15. This Court has personal jurisdiction over Defendant Thomas Lundeen, as an officer, co-owner, agent, representative and alter ego of Defendant Aspen Hills. Mr. Lundeen has purposefully availed himself of the protections of California law by agreeing that California law would govern the Agreement.

16. On information and belief, Mr. Lundeen has also directed his activities toward the State of California and this District by causing Aspen Hills to transfer hundreds of thousands of dollars to himself and/or Nancy Lundeen to the detriment of Arctic Zero, which is located in this District. On information and belief, Mr. Lundeen caused Aspen Hills to make such transfers, or accepted such transfers, with the intent to avoid Aspen Hills's liabilities and obligations to Arctic Zero under California law. Through such conduct, Mr. Lundeen has intentionally and negligently caused harm to Arctic Zero in this District.

17. This Court has personal jurisdiction over Defendant Nancy Lundeen, as an officer, co-owner, agent, representative and alter ego of Defendant Aspen Hills. On information and belief, Mrs. Lundeen has directed her activities toward the State of California and this District by causing Aspen Hills to transfer hundreds of thousands of dollars to herself and/or Thomas Lundeen to the detriment of Arctic Zero, which is located in this District. On information and belief, Mrs. Lundeen caused Aspen Hills to make such transfers, or accepted such transfers, in order to avoid Aspen Hills's liabilities and obligations to Arctic Zero under California law. Through such conduct, Mrs. Lundeen has intentionally and negligently caused harm to Arctic Zero in this District.

18. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this Complaint occurred in this judicial district, and Plaintiff Arctic Zero is headquartered in this district.

## FACTUAL BACKGROUND

### A. The October 1, 2015 Ingredient Supply Agreement

19. On October 1, 2015, Arctic Zero entered into an Ingredient Supply Agreement (the "Agreement") with Aspen Hills. A copy of the Agreement is annexed hereto as **Exhibit 1**.

20. Under the Agreement, Aspen Hills agreed to "defend, hold harmless and indemnify Arctic Zero… from and against any and all claims, actions, liabilities, losses, fines, penalties, costs and expenses (including reasonable attorneys' fees) arising out of or in connection with," among other things, "a breach by [Aspen Hills] of any representation, warranty, or covenant set forth in this Agreement" and "any act, activity or omission of [Aspen Hills] or any of its employees, representatives or agents, including activities on Arctic Zero's premises and the use of any vehicle, equipment, fixture or material of Supplier in connection with any sale to or service for Arctic Zero." Agreement, § 13.

21. Aspen Hills warranted in the Agreement that "Each Ingredient conforms and will conform strictly to all foreign and domestic, federal, state and local regulatory requirements ("Legal Requirements") applicable to the Ingredient, and its production, shipment and sale in the United States[…]" Agreement, § 12(b).

22. Aspen Hills further warranted that "Each Ingredient is and will be fit and sufficient for the purpose intended, and free from defects outside the limits of the specifications for each product, including without limitation, infestation, mold or allergic impurities, pathogens, pits, seeds, foreign objects or residues." Agreement, § 12(e).

23. Aspen Hills further warranted that "[Aspen Hills] will maintain and operate its plant or facility at all times in good and sanitary operating order, condition, and repair consistent with industry standards and in compliance in all material respects with all Legal Requirements pertaining to the operation of its plant and the production and storage of the Ingredients." Agreement, § 12(h).

24. Aspen Hills also agreed to reimburse Arctic Zero for all costs and expenses incurred as a result of a recall of ingredients supplied by Aspen Hills. Section 15(a) of the Agreement provides:

> In the event an Ingredient is the subject of a recall (which includes safety notices) initiated by Arctic Zero, Supplier, or a government or consumer protection agency, Supplier will be responsible for all costs and expenses associated with the Recall or notice and shall reimburse Arctic Zero tor all costs and expenses incurred by Arctic Zero related to the recall or notice, including recalling, shipping and/or destroying the Ingredient (and where applicable, any products with which the Ingredient has been packaged, consolidated, processed or commingled), including Arctic Zero's net landed cost of unsold products containing the Ingredient.

25. The Agreement provides that "the prevailing party in any arbitration or court action or proceeding may be awarded its reasonable attorneys' fees, expenses, and costs." Agreement, § 21.

26. From the October 1, 2015 "Effective Date" of the Agreement until the present date, Arctic Zero has fully complied with all obligations imposed upon it by all provisions of the Agreement.

**B. The Aspen Hills Recall**

27. On or about August 4, 2016, Aspen Hills shipped 287 cases of dough to Arctic Zero.

28. On September 21, 2016, Thomas Lundeen, Aspen Hills's president, notified Arctic Zero by written correspondence that on September 20, 2016, Aspen Hills "initiated a voluntary recall of a small quantity of [its product shipped to a third-party] in response to reports from a customer that it had detected the presence of *Listeria*[.]"

29. On October 9, 2016, Aspen Hills notified Arctic Zero that it was also recalling the 287 cases of dough shipped to Arctic Zero ("the Recall") "because it has the potential to be contaminated with *Listeria*[.]"

30. On October 12, 2016, Mr. Lundeen sent a "personal note of apology" to Arctic Zero explaining that Aspen Hills's failure to comply with safety standards had necessitated the Recall.

31. Mr. Lundeen stated that these failures included "inadequate documentation of protocol, failure to wear proper uniforms, and the possibility of cross-contamination," as well as "failure of our personnel to consistently follow our standard operating procedure."

32. Mr. Lundeen called these failures "an unacceptable lapse in the standards you – and we – expect."

33. As a result of the Recall, Arctic Zero incurred costs and expenses amounting to at least $572,375.33, including the cost of disposed product, shortages caused by the Recall, lost revenue, credits for products returned to vendors, costs for transportation, picking, stocking/restocking and storage, landfill fees, and testing fees.

34. On December 23, 2016, Arctic Zero tendered documentation of its costs and expenses incurred as a result of the Recall to Mr. Lundeen by email.

35. Aspen Hills has failed to indemnify or reimburse Arctic Zero and has not offered assurances that Arctic Zero's claim will be paid in full.

### C. Fraudulent Transfers

36. During the calendar year 2016, notwithstanding the Recall, Aspen Hills transferred more than $2,300,000 to Insiders Thomas and Nancy Lundeen, leaving Aspen Hills insolvent. A summary of such transfers by Aspen Hills to the Insiders is annexed hereto as **Exhibit 2**.

37. For the calendar year 2016, Aspen Hills transferred a total of $530,000 to the Insiders as purported salary payments. Of that amount, $328,077 was transferred to the Insiders during the period of August 2016 through December 2016, including a transfer of $206,923 on December 16, 2016 (collectively, the "Fraudulent Payroll Transfers").

38. On or about July 5, 2016, Aspen Hills transferred $175,000 to the Insiders as alleged dividends.

39. On or about July 7, 2016, Aspen Hills transferred $250,000 to the Insiders as alleged dividends.

40. On or about August 10, 2016, Aspen Hills transferred $250,000 to the Insiders as alleged dividends.

41. On or about September 19, 2016, *one day* before Aspen Hills began its initial recall related to potential *Listeria* contamination, Aspen Hills transferred $350,000 to the Insiders as alleged dividends.

42. On or about December 19, 2016, Aspen Hills transferred $21,700 to Insiders as alleged dividends.

43. On or about December 23, 2016, *the same day* Arctic Zero tendered documentation of Recall-related costs and expenses for reimbursement, Aspen Hills transferred $210,000 to Insiders as alleged dividends.

44. Notwithstanding the Recall, the alleged dividends transferred to Insiders during the 2016 calendar year totaled $1,781,700. Of that amount, $831,700 was transferred to Insiders between August 1, 2016 and December 23, 2016 (collectively, the "Fraudulent Dividends").

45. In comparison, the amount of dividends transferred to the Insiders during the entire calendar years of 2014 and 2015 was $600,000 and $756,669, respectively.

46. Plaintiff is informed and believes, and thereon alleges, that Aspen Hills made additional transfers to Insiders and/or entities under the control of the Insiders between January 1, 2017 and the present (hereinafter, the "2017 Transfers," and collectively with the Fraudulent Payroll Transfers and Fraudulent Dividends, the "Fraudulent Transfers").

47. Plaintiff is informed and believes, and thereon alleges, that following the Fraudulent Transfers, Aspen Hills was left with approximately $250,000 or less in cash, while Aspen Hills's liabilities were in excess of approximately $9,000,000.

48. Plaintiff is informed and believes, and thereon alleges, that Aspen Hills and the Insiders were aware of Aspen Hills's liability to Arctic Zero at the time the Fraudulent Transfers were made.

49. On information and belief, Aspen Hills, Thomas Lundeen, and Nancy Lundeen made the Fraudulent Transfers, caused such transfers to be made, and/or accepted such transfers with the intent to defraud, hinder, or delay Arctic Zero.

### D. Aspen Hills's Alter Ego Status

50. On information and belief, at all relevant times, the Insiders dominated, influenced and controlled Aspen Hills as well as the business, property, and affairs thereof.

51. On information and belief, at all relevant times, there existed a unity of interest and identity between the Insiders and Aspen Hills, such that the individuality and separateness of the Insiders and Aspen Hills have ceased.

52. Adherence to the fiction of the separate corporate existence of Aspen Hills would, under the circumstances, sanction a fraud and promote injustice in that Plaintiff would be unable to realize upon any judgment in its favor because the Insiders caused funds to be withdrawn from Aspen Hills and distributed to Insiders without consideration, preventing collection by Arctic Zero.

53. Aspen Hills is currently insolvent.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### (Negligence – As to All Defendants)

54. Arctic Zero realleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

55. Aspen Hills owed a duty of care to Arctic Zero because the dough supplied by Aspen Hills, if negligently made, was likely to cause harm to Arctic Zero by damaging products into which the dough was incorporated and causing economic loss to Arctic Zero in responding to a recall of the dough.

56. On information and belief, Aspen Hills, and its employees acting within the scope of their employment, breached the duty of care by failing to adhere to adequate safety standards, including, *inter alia*, failing to adequately document protocol, failing to wear proper uniforms, and failing to consistently follow standard operating procedure.

57. Aspen Hills's negligence rendered the dough supplied by Aspen Hills to Arctic Zero unusable and necessitated the Recall.

58. Arctic Zero suffered harm including the cost of disposing unusable products, shortages caused by the Recall, lost revenue, credits for products returned to vendors, transportation, picking, stocking/restocking and storage costs, landfill fees, and testing fees.

59. The Recall and Arctic Zero's injuries were proximately caused by Aspen Hills's breach of the duty of care.

**SECOND CAUSE OF ACTION**

**(Express Indemnity – As to All Defendants)**

60. Arctic Zero realleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

61. Pursuant to the Agreement, Aspen Hills agreed to defend, hold harmless and indemnify Arctic Zero from and against any and all claims, actions, liabilities, losses, fines, penalties, costs and expenses (including reasonable attorneys' fees) arising out of or in connection with a breach by Aspen Hills of any representation, warranty, or covenant or any act, activity or omission of Aspen Hills or any of its employees, representatives or agents.

62. Aspen Hills failed to ensure that the dough shipped to Arctic Zero pursuant to the Agreement was fit and sufficient for its intended purpose, in breach of Aspen Hills's express representation and warranty in Section 12(e) of the Agreement.

63. Aspen Hills failed to maintain and operate its plant or facility at all times in good and sanitary operating order, condition, and repair consistent with industry standards and/or legal requirements, in breach of Aspen Hills's express representation and warranty in Section 12(h) of the Agreement.

64. On information and belief, Aspen Hills, and its employees acting within the scope of their employment, acted negligently by failing to adhere to adequate safety standards, including, *inter alia*, failing to adequately document protocol, failing to wear proper uniforms, and failing to consistently follow standard operating procedure.

65. Aspen Hills's negligence rendered the dough supplied by Aspen Hills to Arctic Zero unusable and necessitated the Recall.

66. Pursuant to the Agreement, Aspen Hills is obligated to indemnify and hold Arctic Zero harmless from and against its Recall-related costs and expenses caused by Aspen Hills's breach of warranties under the Agreement and by the negligence of Aspen Hills and its employees.

**THIRD CAUSE OF ACTION**

**(Breach of Contract – As to All Defendants)**

67. Arctic Zero realleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

68. Arctic Zero has performed all conditions and obligations under the Agreement.

69. By breaching its representations and warranties under the Agreement as set forth above, Aspen Hills has failed to perform its obligations under the Agreement.

70. By failing to indemnify and reimburse Arctic Zero for its Recall-related costs and expenses as required by the Agreement and refusing to provide assurances of such payment, Aspen Hills has failed to perform its obligations under the Agreement.

71. As a result of Aspen Hills's breach of the Agreement, Arctic Zero has incurred damages in the amount of at least $572,375.33, as well as attorneys' fees incurred in seeking reimbursement and enforcing the Agreement.

**FOURTH CAUSE OF ACTION**

**(Declaratory Relief, 28 U.S.C. § 2201 and Cal. Code. Civ. Proc. § 1060 – As to Defendant Aspen Hills)**

72. Arctic Zero realleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

73. A substantial, immediate, and actual controversy now exists between Arctic Zero and Aspen Hills in that Arctic Zero contends that Aspen Hills is obligated to immediately defend, hold harmless, and indemnify Arctic Zero from and against any and all claims, actions, liabilities, losses, fines, penalties, costs and expenses (including reasonable attorneys' fees) arising out of or in connection with the Recall, whereas Aspen Hills denies such contention.

74. Furthermore, a substantial, immediate, and actual controversy now exists between Arctic Zero and Aspen Hills in that Arctic Zero contends that Aspen Hills is obligated to immediately reimburse Arctic Zero for all Recall-related expenses, whereas Aspen Hills denies such contention.

75. A judicial declaration is necessary and appropriate at this time so that Arctic Zero's rights under the Agreement may be determined with certainty.

76. Accordingly, Arctic Zero seeks a declaration by this Court that Aspen Hills is obligated to defend, hold harmless and indemnify Arctic Zero from and against any and all claims, actions, liabilities, losses, fines, penalties, costs and

expenses (including reasonable attorneys' fees) arising out of or in connection with the Recall.

77. Furthermore, Arctic Zero seeks a declaration by this Court that Aspen Hills is obligated to reimburse Arctic Zero for its Recall-related costs and expenses.

**FIFTH CAUSE OF ACTION**

**(Fraudulent Transfers, Cal. Civ. Code §§ 3439.04, 3439.05 – As to All Defendants)**

78. Arctic Zero realleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

79. On or before August 10, 2016, and continuing thereafter, Arctic Zero held a claim against Aspen Hills as set forth herein, for, *inter alia*, breach of the Agreement and negligence.

80. In addition, beginning in September 2016, Arctic Zero incurred expenses for which Aspen Hills was obligated to indemnify Arctic Zero under the Agreement.

81. Upon information and belief, on or before August 10, 2016, and continuing thereafter, Aspen Hills and the Insiders were aware of the circumstances giving rise to Arctic Zero's claims, including, *inter alia*, Aspen Hills's negligent conduct and breach of the Agreement, as well as the fact that affected products had been shipped to Arctic Zero.

82. During the period from August 10, 2016 until December 31, 2016, Aspen Hills made Fraudulent Transfers amounting to at least $1,159,777 to the Insiders.

83. Plaintiff is informed and believes, and thereon alleges, that Aspen Hills and the Insiders made the Fraudulent Transfers willfully with the actual intent to defraud, hinder, or delay Arctic Zero.

84. The Fraudulent Transfers were made by Aspen Hills to Insiders Thomas and Nancy Lundeen, who are insiders within the meaning of California Civil Code § 3439.04.

85. On information and belief, the Fraudulent Transfers were made without receiving reasonably equivalent value in exchange.

86. At all relevant times, Aspen Hills and the Insiders knew or should have known that Aspen Hills was liable for claims for breach of contract and negligence, as well as for debts relating to the Recall, including, but not limited to, indemnification and reimbursement of Arctic Zero's fees and expenses caused by and relating to the Recall.

87. As to the Fraudulent Transfers made on or after September 19, 2016, on information and belief, such transfers were made after Aspen Hills and the Insiders had decided to initiate Aspen Hills's first product recall related to potential *Listeria* contamination.

88. As to the Fraudulent Transfers made after October 12, 2016, such transfers were made after Insider Thomas Lundeen admitted in writing that Aspen Hills had committed "unacceptable lapse" in safety standards.

89. As to the Fraudulent Transfers made on and after December 23, 2016, at the time of those transfers, Aspen Hills was in possession of documentation reflecting Arctic Zero's claim against Aspen Hills of $572,375.33.

90. At the time the Fraudulent Transfers were made, Aspen Hills's remaining assets were unreasonably small in relation to the liabilities it had incurred or reasonably should have expected to incur as part of its continuing operations.

91. Plaintiff is informed and believes, and thereon alleges, that the Fraudulent Transfers amounted to substantially all of Aspen Hills's assets.

92. Plaintiff is informed and believes, and thereon alleges, that at the time of the Fraudulent Transfers, Aspen Hills was insolvent or became insolvent as a result of such transfers.

93. Accordingly, the Fraudulent Transfers are avoidable pursuant to California Civil Code Sections 3439.04(a)(1), 3439.04(a)(2), and 3439.05.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Arctic Zero prays that this Court:

A. Declare that Aspen Hills is obligated to defend, hold harmless and indemnify Arctic Zero from and against any and all claims, actions, liabilities, losses, fines, penalties, costs and expenses (including reasonable attorneys' fees) arising out of or in connection with the Recall.

B. Declare that Aspen Hills is obligated to reimburse Arctic Zero for all Recall-related expenses.

C. Enter judgment in favor of Arctic Zero against Aspen Hills for Recall-related expenses in the amount of $572,375.33 plus interest thereon.

D. Enter judgment in favor of Arctic Zero against Insiders Thomas Lundeen and Nancy Lundeen in the amount of $572,375.33, plus interest thereon, pursuant to Cal. Civ. Code § 3439.08(b), or, in the alternative, as alter egos of Aspen Hills.

E. Issue a preliminary and permanent injunction enjoining and restraining Defendants Thomas Lundeen and Nancy Lundeen, or their agents and representatives from selling, transferring, conveying, or otherwise disposing of any of the property described herein or the proceeds thereof.

F. Hold all assets and proceeds of the Fraudulent Transfer in constructive trust for the benefit of Arctic Zero.

G. Award Arctic Zero compensatory damages according to proof.

H. Award Arctic Zero punitive damages pursuant to Cal. Civ. Code § 3294(a).

I. Award Arctic Zero its costs, including reasonable attorneys' fees.

J. Grant other and further relief as this Court may deem just and proper.

Dated: April 26, 2017

Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP

By: *s/ J. Noah Hagey*
J. Noah Hagey

Attorneys for Plaintiff
ARCTIC ZERO, INC.