1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11   ARCTIC ZERO, INC., a Delaware          Case No.:  17-cv-00459-AJB-JMA
     Corporation,
12                                          **ORDER:**
                            Plaintiff,
13                                          **(1) DENYING DEFENDANT ASPEN**
     v.                                     **HILLS AND THOMAS AND NANCY**
14                                          **LUNDEEN'S MOTIONS TO STAY**
                                            **ACTION PENDING RESOLUTION**
15                                          **OF IOWA STATE COURT**
     ASPEN HILLS, INC., an Iowa             **RECEIVERSHIP PROCEEDINGS;**
16   Corporation, THOMAS LUNDEEN, an        **AND**
     individual, NANCY LUNDEEN, an
17   individual and DOES 1 through 25,      **(2) DENYING ASPEN HILLS AND**
     inclusive,                             **THOMAS AND NANCY LUNDEEN'S**
18                                          **MOTIONS TO DISMISS**
                            Defendants.
19
20                                          (Doc. Nos. 6, 16)

21
22
23

24       Presently before the Court are Defendants Aspen Hills, Inc. ("Aspen Hills") and

25   Thomas and Nancy Lundeen's (collectively referred to as "the Lundeens") motions to

26   dismiss Plaintiff Arctic Zero Inc.'s ("Plaintiff") first amended complaint, or in the

27   alternative to stay the action pending resolution of the Iowa State Court Receivership

28   Proceedings. (Doc. Nos. 6, 16.) Having reviewed the parties' arguments and controlling

legal authority, and pursuant to Civil Local Rule 7.1.d.1, the Court finds the matters suitable for decision on the papers and without oral argument. For the reasons set forth below, the Court **DENIES** both Defendants' motions to stay and motions to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a corporation organized under the laws of the state of Delaware with its principal place of business in San Diego, California. (Doc. No. 3 ¶ 4.) Aspen Hills is a former cookie dough manufacturer, organized under the laws of the state of Iowa with its principal place of business in Garner, Iowa. (*Id*. ¶ 5; Doc. No. 6 at 8.)[1] The Lundeens are individuals who reside in the state of Iowa and are co-owners of Aspen Hills. (Doc. No. 3 ¶¶ 6, 7.)

The events leading up to this dispute arose in 2016, when Aspen Hills recalled 287 cases of allegedly negligently manufactured brownie dough. (Doc. No. 6 at 8; Doc. No. 24 at 9.) Currently, there are over $11 million in claims being asserted against Aspen Hills. (Doc. No. 6 at 8.) As a result of the substantial claims asserted against Aspen Hills and the limited assets available for distribution, receivership proceedings involving Aspen Hills commenced in Iowa District Court for Hancock County—*A.H. Properties v. Aspen Hills, Inc.*, Hancock County Case No.: EQCV019535. (*Id.*)

Plaintiff and Aspen Hills were in an arrangement that centers on an October 1, 2015 Ingredient Supply Agreement. (Doc. No. 3 ¶ 19.) Under this agreement, Aspen Hills, among other things, agreed to indemnify Plaintiff against any and all claims, warranted that each ingredient conformed strictly to all domestic and foreign regulatory requirements, and merited that each ingredient would be fit and sufficient for the purpose intended. (*Id*. ¶¶ 20–22; Doc. No. 3-1 at 7.) Additionally, Aspen Hills agreed to reimburse Plaintiff for all costs and expenses incurred as a result of a recall of ingredients supplied by it. (Doc. No. 3-1 at 10.) Section 15(a) of the Agreement provides that:

---

[1] Page numbers refer to the CM/ECF page number and not the number listed on the original document.

> In the event an Ingredient is the subject of a recall (which includes safety notices) initiated by Arctic Zero, Supplier, or a government or consumer protection agency, Supplier will be responsible for all costs and expenses associated with the recall or notice and shall reimburse Arctic Zero, for all costs and expenses incurred by Arctic Zero related to the recall or notice, including recalling, shipping and/or destroying the Ingredient (and where applicable, any products with which the Ingredient has been packaged, consolidated, processed or commingled), including Arctic Zero's net landed cost of unsold products containing the Ingredient.

(*Id.*)

After the recall, Plaintiff allegedly incurred costs and expenses amounting to at least $572,375.33, including the cost of disposed product, lost revenue, credits for products returned to vendors, and various costs associated with transportation, landfill fees, and testing fees. (Doc. No. 3 ¶ 33.) On December 23, 2016, Plaintiff tendered this documentation of its costs and expenses to Mr. Lundeen. (*Id.* ¶ 34.)

Mr. and Mrs. Lundeen are purportedly the corporate alter egos of Aspen Hills acting as the President, Secretary, and Treasurer to the company. (*Id.* ¶¶ 5, 6, 7.) Plaintiff argues that as "insiders," the Lundeens in 2016 began to transfer large amounts of money to themselves, leaving Aspen Hills insolvent. (*Id.* ¶ 36.) In total, the alleged dividends transferred to the Lundeens during 2016 totaled $1,781,700. (*Id.* ¶ 44.) Thus, after the supposed fraudulent transfers, Aspen Hills was only left with approximately $250,000 or less in cash with an excess of approximately $9,000,000 in liabilities. (*Id.* ¶ 47.)

On or about December 28, 2016, the Honorable Rustin Davenport, District Court Judge for the Second Judicial District of Iowa signed the "Order Granting the Joint Motion for the Appointment of a Receiver" (the "Receivership Order"). (Doc. No. 6 at 9.) The Receivership Order includes a number of elements including that it prohibits any litigation against Aspen Hills without first obtaining leave of the court. (*Id.*)

Currently, Aspen Hills alleges that the business wind-down process is underway with the Iowa Court exercising jurisdiction over all receivership property. (*Id.* at 10.)

17-cv-00459-AJB-JMA

Moreover, on April 11, 2017, Judge Davenport signed the "Order on Claims Process" to establish an orderly process to address and resolve any claims that have been, or may be asserted against Aspen Hills in light of the financial resources that are available. (*Id.*)

On March 6, 2017, Plaintiff filed its complaint against all Defendants. (Doc. No. 1.) On April 26, 2017, Plaintiff filed its amended complaint alleging causes of action for (1) negligence; (2) express indemnity; (3) breach of contract; (4) declaratory relief only as to Aspen Hills; and (5) fraudulent transfers. (*See generally* Doc. No. 3.) On May 19, 2017, and June 6, 2017, respectively, Aspen Hills and the Lundeens filed the present motions, their motions to dismiss or stay the action. (Doc. Nos. 6, 16.) On June 2, 2017, and June 20, 2017, Plaintiff responded in opposition to the motions. (Doc. Nos. 13, 24.) Subsequently on June 28, 2017, Defendants filed a joint motion to continue the hearing on their various motions, (Doc. No. 28), which was granted on June 30, 2017, (Doc. No. 30). This Order now follows.

## **LEGAL STANDARD**

### A.    Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). Additionally, courts generally do not look beyond the complaint for additional facts when deciding a Rule 12(b)(6) motion. *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). Further, legal conclusions need not be taken as true "merely because they are

cast in the form of factual allegations." *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

## B.    Motion to Stay

A court's power to stay proceedings is incidental to the inherent power to control the disposition of its cases in the interests of efficiency and fairness to the court, counsel, and litigants. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936); *Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1057 (S.D. Cal. 2007). A stay may be granted pending the outcome of other legal proceedings related to the case in the interests of judicial economy. *See Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979). Discretion to stay a case is appropriately exercised when the resolution of another matter will have a direct impact on the issues before the court, thereby substantially simplifying the issues presented. *See Mediterranean Enters. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983).

In determining whether a stay is appropriate, a district court "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55. "[I]f there is even a fair possibility that the stay . . . will work damage to someone else, the stay may be inappropriate absent a showing by the moving party of hardship or inequity." *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (citation and internal quotation marks omitted). "A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva*, 593 F.2d at 864.

## **DISCUSSION**

## A.    Judicial Notice

As a threshold issue, the Court will first turn to Plaintiff and Defendants' requests for judicial notice. (Doc. Nos. 6-2, 8, 9, 15, 16-9, 26.) Aspen Hills requests judicial notice of (1) a copy of the Receivership Order dated December 28, 2016; and (2) a copy of the

April 11, 2017, Order on Claims Process. (Doc. No. 6-2 at 2; Doc. No. 8 at 2; Doc. No. 9 at 2.)[2] Plaintiff seeks judicial notice of (1) the joint motion for appointment of a receiver filed on December 23, 2016; (2) the Receivership Order; (3) the motion to intervene filed by the Lundeens on April 5, 2017, in Iowa District Court for Hancock County; and (4) the Fourth Report of Receiver, filed on May 16, 2017, in Iowa District Court.[3] (Doc. No. 15 at 2; Doc. No. 26 at 2.) Finally, the Lundeens request judicial notice of (1) the files in the case of *A.H. Properties, LLC v. Aspen Hills, Inc.*, Case No. EQCV019535; and (2) Exhibits A through F of the declaration of Johannes H. Moorlach. (Doc. Nos. 16-9 at 1–2.)

Federal Rule of Evidence 201(b) provides the criteria for judicially noticed facts: a judicially noticed fact must be one not subject to reasonable dispute in that it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c).

The Court finds judicial notice of both Plaintiff and Defendants' documents warranted as they are documents of public record related to the Iowa state proceedings. *See United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 973 (E.D. Cal. 2004) ("Federal courts may 'take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.'" (citing *U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992)). Moreover, "[j]udicially noticed facts often consist of matters of public record." *Botelho v. U.S. Bank, N.A.*, 692 F. Supp. 2d 1174, 1178 (N.D. Cal. 2010) (citations omitted). However, while "[a] court may take judicial notice of the existence of matters of

---

[2] The Court notes that Aspen Hills filed three separate requests for judicial notice of the same documents.

[3] Plaintiff's requests for judicial notice mistakenly requested the Court notice the December 23, <u>2017</u>, and December 28, <u>2017</u> Iowa District Court orders. (Doc. No. 15 at 2.)

public record, such as a prior order or decision," it should not take notice of "the truth of the facts cited therein." *Marsh v. San Diego Cty.*, 432 F. Supp. 2d 1035, 1043 (S.D. Cal. 2006).

Accordingly, with the limitation stated above in mind, the Court **GRANTS** Plaintiff, Aspen Hills, and the Lundeens' unopposed requests for judicial notice.

B.     Aspen Hills and the Lundeens' Motions to Stay these Proceedings

The Court now turns to the merits of Defendants' motions to stay. (Doc. Nos. 6, 16-1.) Aspen Hills requests that this Court stay the instant action under the *Colorado River* and *Burford* doctrines to allow the Iowa State receivership proceedings to complete its process. (Doc. No. 6 at 18–23.) The Lundeens similarly assert that the *Colorado River* factors weigh heavily in their favor as well as argue that a stay is appropriate under the *Princess Lida* doctrine. (Doc. No. 16-1 at 12–14, 21.)  In opposition, Plaintiff mounts that there are no grounds for abstention. (Doc. No. 13 at 19–21; Doc. No. 24 at 27–31.)

At the outset, the Court notes that it does not find abstention appropriate under the *Burford* doctrine. Aspen Hills argues that under *First Penn-Pac. Life Ins. Co. v. William R. Evans, Chtd.*, 304 F.3d 345 (4th Cir. 2002), this Court should abstain from interfering with the state court receivership under the *Burford* doctrine. (Doc. No. 6 at 22.) However, not only is this a fourth circuit case and thus not dispositive, but the court in this case clearly stated that the underlying policy of the *Burford* doctrine is that

> Courts should abstain from deciding cases presenting "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," or whose adjudication in a federal forum "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*Id.* at 348. Similarly, in *Tucker v. First Maryland Sav. & Loan, Inc.*, 942 F.2d 1401, 1407 (9th Cir. 1991), the Court concluded that *Burford* abstention "is designed to limit federal interference with the development of state policy. It is justified where the issues sought to be adjudicated in federal court are primarily questions regarding that state's laws." Such

concerns about state law policy considerations are not readily apparent in the instant action nor has Aspen Hills alleged any facts to support such a finding. Thus, the Court will focus its attention on both parties' arguments under the *Colorado River* doctrine.

Under the *Colorado River* doctrine, a federal court may abstain from exercising its jurisdiction in favor of parallel state proceedings where doing so would serve the interests of "[w]ise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1983). Only in "exceptional circumstances," may a federal court decline its "'virtually unflagging obligation' to exercise federal jurisdiction, in deference to pending parallel state proceedings." *Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1165 (9th Cir. 2017) (citation omitted). A stay is preferable to dismissal because it "ensures that the federal forum will remain open if, for some unexpected reason, the state forum proves to be inadequate." *Daugherty v. Oppenheimer & Co., Inc.,* No. C 06–7725-PJH, 2007 WL 1994187, at *3 (N.D. Cal. July 5, 2007).

*Colorado River* and Ninth Circuit opinions identify non-exhaustive factors that are relevant to whether it is appropriate to stay proceedings: "(1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court." *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978–79 (9th Cir. 2011); *Holder v. Holder*, 305 F.3d 854, 870 (9th Cir. 2002). These factors should be weighed in a "pragmatic, flexible manner with a view to the realities of the case at hand" and "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses*, 460 U.S. at 16, 21. Factors that are irrelevant to the particular inquiry are disregarded. *See Nakash v. Marciano*, 882 F.2d 1411, 1415 n.6 (9th Cir. 1989).

"The threshold question in deciding whether *Colorado River* abstention is appropriate is whether there are parallel federal and state suits." *ScripsAmerica, Inc. v. Ironridge Global LLC*, 56 F. Supp. 3d 1121, 1147 (C.D. Cal. 2014) (citing *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005)). In the Ninth Circuit, "exact parallelism [between the two suits] . . . is not required. It is enough if the two proceedings are 'substantially similar.'" *Nakash*, 882 F.2d at 1416.

Here, the state court action and this action both name Aspen Hills as a Defendant. (Doc. No. 16-3 at 2; Doc. No. 16-6 at 2.) Moreover, the claims that are the subject of the present motion—negligence, express indemnity, and breach of contract—are substantially similar if not identical to the causes of action listed in the proof of claim filed by Plaintiff in the Iowa state court petition. (Doc. No. 3; Doc. No. 6-7.) Further, the relief Plaintiff seeks also appears to be substantially identical. In state court, Plaintiff seeks, *inter alia*, damages in the amount of at least $622,375.33, attorney's fees, and other damages for Aspen Hills's alleged fraudulent transfers in an effort to delay or defraud creditors. (Doc. No. 6-7 at 7–8.) In this case, Plaintiff similarly seeks damages, but in the amount of $572,375.33, in addition to a preliminary and permanent injunction enjoining the Lundeens from transferring or otherwise disposing of any further property, attorney's fees, and punitive and compensatory damages. (Doc. No. 3 at 15.)

Consequently, as there is substantial overlap between the factual allegations, legal issues, and relief sought in the proof of claim filed in the state proceeding and the present federal action, the Court concludes that the threshold requirement of parallel federal and state actions is met. The Court will now examine the *Colorado River* factors to determine if abstention is warranted.

### *i.      Jurisdiction over any Property at Stake*

The Court's first concern is "avoiding the generation of additional litigation through permitting inconsistent disposition of property." *Colorado River*, 424 U.S. at 819. Both Aspen Hills and the Lundeens contend that the state court has established jurisdiction over the res, thus this factor strongly favors abstention. (Doc. No. 6 at 19; Doc. No. 16-1 at 19.)

In direct contrast, Plaintiff argues that it does not seek relief with respect to the "Aspen Hills res," but instead the instant action is an in personam action. (Doc. No. 13 at 24; Doc. No. 24 at 19.)

The Court finds pertinent to this discussion is the distinction between in personam and in rem actions, described as follows:

> Actions are, as to their object, either in personam or in rem. An action in personam has for its object a judgment against a person, as distinguished from an action in rem that has as its object a judgment determining the status of property. If the entire object of the action is to determine the personal rights and obligations of the defendants, then the suit is in personam; but if the object is to determine rights in specific property as against all the world, the action is in rem.

*Am. Alt. Ins. Corp. v. Am. Prot. Ins. Co.*, No. 1:11–CV–01865–AWI (SKO), 2013 WL 1281939, at *3 (E.D. Cal. Mar. 25, 2013) (quoting 1A Cal. Jur. 3d Actions § 30)).

In making this distinction, the Ninth Circuit has focused on the potential of the federal court's interference with property under control of the State Court. *See Hawthorne v. Savings F.S.B. v. Reliance Ins. Co. of Illinois*, 421 F.3d 835, 855 (9th Cir. 2005). In *Hawthorne*, Hawthorne Savings, a financial corporation, sued its Insurer, Reliance, in California state court for contract-based-claims. *Id.* at 838. The suit was removed to the U.S. District Court for the Central District of California based on diversity jurisdiction. *Id.* While the suit was pending, Reliance was placed in rehabilitation proceedings and ultimately in liquidation proceedings, in which "[a]ll actions, including arbitrations and mediations, currently pending against Reliance in the courts of the Commonwealth of Pennsylvania or elsewhere [were] stayed." *Id.* at 840. Subsequently, "[w]hile the liquidation proceedings were ongoing, Reliance moved to dismiss the Hawthorne lawsuit on the ground that the liquidation order vested the Pennsylvania Commonwealth Court with 'exclusive' jurisdiction over claims against Reliance and enjoined any continued prosecution of claims against Reliance in other fora." *Id.* However, the district court denied

the motions to dismiss, the case went to trial, and a jury verdict of nearly $1 million dollars was rewarded to Hawthorne. *Id.* at 841.

The Ninth Circuit Court of Appeals then analyzed whether the district court properly exercised jurisdiction. Although *Hawthorne* analyzes abstention in regards to insurance law, this Court finds instructive the *Hawthorne* court's reasoning:

> not every suit brought against a receivership defendant is deemed to interfere with the res. The distinction is commonly made between the liquidation of a claim and the enforcement of the claim after it has been reduced to judgment. Thus, an action in personam to establish the extent of an insolvent's liability on a claim is held not to interfere with the receivership res. By the same token, any attempted attachment or levy against the res made in connection with a judgment is normally in rem and directly opposed to the court's dominion over the res. Accordingly, an in personam action against the receivership defendant need not be brought in the receivership court.

*Id.* at 855 (quoting *Fuhrman v. United Am. Insurors*, 269 N.W. 2d 842 (Minn. 1978)). Based on the language of California's Insurance Code, the Ninth Circuit ultimately determined a judgment against an insolvent insurer would not interfere with the liquidation proceedings.

Thus, despite Aspen Hills and the Lundeens' arguments that this Court will be exercising control over the same property as the Iowa court, (Doc. No. 6, at 16), this Court does not assert dominion or control over the Aspen Hills assets nor does it provide a means of enforcement or collection if Arctic Zero prevails. Instead, as in *Hawthorne*, the Court finds that Plaintiff does not pursue the status of any property in the state claim and the "bare existence of a judgment" in this case would not interfere with the Iowa court's resolution of the various creditor issues. *See Hawthorne*, 421 F.3d at 856. As an in personam action, the Court would merely be reducing a claim to judgment, which would not interfere with the receivership property. *See U.S. Bank Nat. Ass'n v. Johnny A. Ribeiro, Jr. Family Trust*, No. 3:11–cv–00691–RCJ-WGC, 2012 WL 280709, at *1 (D.Nev. Jan. 31, 2012) ("But the present case is an *in personam* contract action for a money judgment

against Guarantors, not an *in rem* case seeking to control the real estate securing the Note. The present case therefore cannot conflict with the state court's control over the res.").

Finding the action in personam, the Court concludes the first factor under *Colorado River* weighs neutrally because Plaintiff does not seek disposition of any property.[4]

### ii.     *Avoiding Piecemeal Litigation*

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988). The parties dispute whether the state and federal actions raise the same issues or whether piecemeal litigation will occur if this action is not stayed. (*See* Doc. No. 6 at 19; Doc. No. 13 at 25; Doc. No. 16-1 at 20.)

Adjudication of this federal case will unquestionably involve addressing many of the same issues proceeding in Iowa state court. Nonetheless, nothing about this case "raise[s] a 'special concern about piecemeal litigation,' which can be remedied by staying or dismissing the federal proceeding." *R.R. Street & Co*, 656 F.3d at 979 (citation omitted). "[T]he Ninth Circuit has explained that the concern for avoidance of piecemeal litigation weighs in favor of a stay only when 'there is evidence of a strong federal policy that all claims should be tried in the state courts.'" *Melt Franchising, LLC v. PMI Enter. Inc.*, No. CV 08-4148 PSG (MANx), 2008 WL 4811097, at *3 (C.D. Cal. Oct. 27, 2008) (citing *United States v. Morros*, 268 F.3d 695, 706-07 (9th Cir. 2001)). No such clear federal

---

[4]Relatedly, the Court notes that the Lundeens' arguments for application of the *Princess Lida* doctrine is also inapplicable. (Doc. No. 16-1 at 17–19.) Under *Princess Lida of Thurn & Taxis v. Thompson,* 305 U.S. 456, 466 (1939), "if the two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other." As the Court has now concluded that this instant case is not in rem, the Court need not analyze the parties' arguments under the *Princess Lida* doctrine.

policy exists in this case. Therefore, this factor does not support an entry of a stay. *See U.S. Bank Nat. Ass'n*, 2012 WL 280709, at *2 (holding that "where Plaintiff has sued two sets of defendants, one in state court to recover on a promissory note, and the other in federal court to recover on a guaranty of that promissory note, [this] represent[s] a rare litigation pattern making abstention in the latter-filed federal case appropriate.").

As to the Lundeens, the Court notes that the proceedings with Aspen Hills in Iowa State Court do not affect Plaintiff's personal claims against them. The Receivership Order clearly delineates that it is an action in rem and that the Receiver is to collect on the assets, modify any agreements necessary to the company's business, enforce payment obligations, and dispose of the company's assets through a liquidation sale process. (Doc. No. 16-4 at 15.) Moreover, the Lundeens are only part of the state court action through their motion to intervene granted on April 7, 2017. (Doc. No. 16-6.) Consequently, Plaintiff's causes of action for negligence, breach of contract, and fraudulent transfers against the Lundeens individually would not run the risk of piecemeal litigation.

Thus, this factor weighs against abstention.

### iii. *Controlling Law*

Both Aspen Hills and the Lundeens contend that there are no federal issues involved in this diversity case and thus this factor weighs in favor of abstention. (Doc. No. 6 at 21; Doc. No. 16-1 at 20.) In opposition, Plaintiff suggests that California state law would provide the rule of decision based on the exclusive jurisdiction and governing law provisions of the parties' Ingredient Supply Agreement. (Doc. No. 13 at 11, 26–27.) The Court agrees with Plaintiff.

Though both Defendants are correct that the instant case does not involve any federal issues, the Court cannot ignore the fact that the 2015 Ingredient Supply Agreement states that "all agreements between Supplier and [Plaintiff] will be governed by and construed according to the laws of the state of California . . . ." (Doc. No. 3-1 at 11.) Moreover, as Plaintiff's state law claims involve "routine issues of state law that this court is fully capable of deciding, there are no rare circumstances here that would justify a stay."

*ScripsAmerica, Inc.*, 56 F. Supp. 3d at 1151 (citation omitted). Thus, this factor weighs against staying this federal action. *See Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1370 (9th Cir. 1990) (finding this factor weighed against dismissal or stay because the state law claims were routine).

### iv.    Adequacy of State Court

"A district court may not stay or dismiss the federal proceeding if the state proceeding cannot adequately protect the rights of the federal litigants." *R.R. St. & Co.*, 656 F.3d at 981. Aspen Hills argues that Plaintiff's rights will be adequately protected in the state court receivership proceedings as the receiver will evaluate all claims, file a report with his recommendations, and Plaintiff along with other claimants will have the chance to object. (Doc. No. 6 at 21.) The Lundeens state that as the Receiver has already been given the sole authority to pursue the claims against them, the claims by Plaintiff must logically be adjudicated in the Receivership action. (Doc. No. 16-1 at 20.)

In opposition, Plaintiff raises concerns that the Iowa Court would (1) vitiate Plaintiff's right to litigate its claims in San Diego, the parties' contractually agreed forum; (2) that the Iowa proceedings' failure to provide a provision for discovery in the receivership order will deny Plaintiff the right to review documents or information relevant to its claims; and (3) that there are lingering questions about the fairness of the receivership process as Plaintiff alleges that the Lundeens have been fraudulently transferring assets from Aspen Hills. (Doc. No. 13 at 27–28.)

Despite the various arguments presented by both parties, the Court notes that the Ninth Circuit has concluded that "[t]his factor involves the *state* court's adequacy to protect *federal rights*, not the federal court's adequacy to protect state rights." *Travelers Indem. Co.*, 914 F.2d at 1370. As this case does not involve any federal rights, and the Court is confident that the Iowa Court can fairly and competently adjudicate Plaintiff's state law claims, this factor does weigh slightly in favor of abstention. However, the Court balances this with the fact that the majority of Plaintiff's claims against the Lundeens are not covered by the receivership order. Thus, this factor weighs neutrally.

### v.    Forum Shopping

In the context of the *Colorado River* doctrine, the Ninth Circuit has held that "forum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules." *Id*. at 1371. The Court considers the "vexatious or reactive nature of either the federal or the state litigation" when determining whether there is forum shopping. *R.R. Street & Co.,* 656 F.3d at 981.

Despite the forum selection clause within the parties' Ingredient Supply Agreement, the Court highlights that the Receivership Order clearly states that "[w]ithout first obtaining leave of the Court, all . . . creditors . . . are enjoined from[] [c]ommencing, prosecuting, continuing or enforcing any suit or proceeding in law . . . affecting the Company or any party of the Company's assets in any forum other than this Court[.]" (Doc. No. 6-3 at 12.) Plaintiff's failure to allege that they obtained leave from the Iowa state court leads to the inference that Plaintiff filed this action seeking to gain a tactical advantage over other creditors in the receivership proceeding.

However, the Court also notes that "[t]he desire for a federal forum is assured by the constitutional provision for diversity jurisdiction," and as such, federal courts are "cautious about labeling as 'forum shopping' a plaintiff's desire to bring previously unasserted claims in federal court." *R.R. Street & Co.*, 656 F.3d at 982. Thus, taking into account that Plaintiff has alleged a fraudulent transfer claim against both Defendants, a claim not present in the Receivership action, the Court cannot conclude that Plaintiff is forum shopping. Additionally, the Court highlights that Plaintiff's proof of claim filed in the receivership action informs the state court that it filed the present action. (Doc. No. 6-7 at 6–7.) Thus this factor weighs slightly against abstention.

### vi.    Whether State Proceedings Resolve All of the Issues

"[T]he existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a [*Colorado River*] stay." *Intel Corp. v. Adv. Micro Devices, Inc.,* 12 F.3d 908, 913 (9th Cir.1993). "When a district court decides

17-cv-00459-AJB-JMA

to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. *If there is any substantial doubt as to this*, it would be a serious abuse of discretion to grant the stay or dismissal at all . . . ." *Id.* (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28.)

The Court notes that Aspen Hills does not address this factor, (*see generally* Doc. No. 6), and the Lundeens argue that the claims against them have already been defined by the Iowa District Court as assets of Aspen Hills and it has given the Receiver the sole authority to pursue those claims, (Doc. No. 16-1 at 20). Plaintiff responds that the Iowa receivership will not provide resolution as to whether Aspen Hills is the alter ego of the Lundeens and that it has no assurance that its fraudulent transfer claims will be addressed as the state court action is confined to administration of the estate of Aspen Hills. (Doc. No. 24 at 31.)

At this point in the litigation and based on the arguments present in the moving parties, the Court is not certain that the Receivership proceedings would be able to adequately protect Plaintiff's interests as it will not address its fraudulent transfer allegations. This claim is neither pled in Plaintiff's proof of claim nor is it addressed in the Receivership Order. Accordingly, this factor disfavors abstention. *See Smith v. Cent. Ariz. Water Conservation Dist.,* 418 F.3d 1028, 1033 (9th Cir. 2005) ("'[T]he existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes'" a *Colorado River* stay or dismissal (quoting *Intel Corp.*, 12 F.3d 913)).

### vii.    *The Balance*

To determine whether a stay is warranted, the relevant factors must be balanced, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16. Here, none of the major factors favor a stay. Accordingly, there are no "exceptional circumstances" required for *Colorado River* deference and both Aspen Hills and the Lundeens' motions to stay are **DENIED**.

///

## C.    Aspen Hills's Motion to Dismiss

As the Court has denied Aspen Hills's motion to stay, it will now turn to Aspen Hills's alternative arguments seeking a motion to dismiss Plaintiff's first amended complaint. (Doc. No. 6.) Aspen Hills asks this Court to dismiss under Rule 12(b)'s "nonenumerated" grounds, including considerations of comity. (*Id.* at 12–13.) Plaintiff retorts that there are no grounds for dismissal under Rule 12(b) and that Aspen Hills's case law to support its arguments is inapposite. (Doc. No. 13 at 18.)

As already delineated in the legal standard section, a Rule 12(b) motion to dismiss is based on several defenses including lack of subject matter jurisdiction, improper venue, lack of personal jurisdiction, or failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b). Presently, Aspen Hills seeks to argue that a Rule 12(b) motion can be established on "nonenumerated" grounds based on *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083 (9th Cir. 2012).

In *Bilyeu*, the Ninth Circuit Court of Appeals was reviewing for abuse of discretion the district court's refusal to grant an exception to the Employee Retirement Income Security Act of 1974 ("ERISA"). *Id.* at 1088. In analyzing this case, the Ninth Circuit stated that "[c]onsistent with circuit practice addressing <u>exhaustion</u>, we construe [Defendant's] motion as an unenumerated motion to dismiss." *Id.* (emphasis added). The court then continued to state that in addressing this type of motion "a court may look beyond the pleadings and decide disputed issues of fact." *Id.* (citing *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 881 (9th Cir. 2011) (en banc)).

It cannot be reasonably disputed that the instant action is not an ERISA case and does not deal with a denial of benefits claim or exhaustion of administrative remedies. Thus, the rational espoused by Aspen Hills that the Court can look to allegations outside the pleading, more specifically to the doctrine of judicial comity, to dismiss Plaintiff's complaint is erroneous. *See Irvin v. Zamora*, 161 F. Supp. 2d 1125, 1128 (S.D. Cal. 2001) ("However, the standard changes somewhat for 'nonenumerated' Rule 12(b) motions to dismiss that raise the issue of administrative exhaustion. Courts considering

17-cv-00459-AJB-JMA

'nonenumerated' Rule 12(b) motions on the issue of administrative exhaustion may not only rely on matters outside the pleadings but have broad discretion to resolve any factual disputes.").

Further, *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), cited by Aspen Hills to argue that dismissal can be based on comity is also not applicable to the present matter. In *Exxon Mobile*, the Supreme Court was primarily and solely focused on analyzing the Rooker-Feldman doctrine. *Id.* at 280. As the Court has already concluded that a stay under the *Colorado River* doctrine is inappropriate, *Exxon Mobile*'s holding is equally unhelpful in supporting Aspen Hills's motion to dismiss.

Consequently, as Aspen Hills fails to make any further arguments under any applicable Rule 12(b) defense, the Court **DENIES** Aspen Hills's motion to dismiss.

D.     Personal Jurisdiction over the Lundeens

Next, the Court analyzes the Lundeens' motion to dismiss for lack of personal jurisdiction. (Doc. No. 16-1 at 9.)

Federal Rule of Civil Procedure 12(b)(2) allows a district court to dismiss an action for lack of personal jurisdiction. The Due Process Clause requires a nonresident defendant have certain "minimum contacts" with the forum state such that the "traditional notions of fair play and substantial justice" are not offended. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Additionally, "the defendant's conduct and connection with the forum [must be] such that [the defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The focus is primarily on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

The Ninth Circuit uses a three-prong test to determine whether a defendant's contacts meet the criteria for personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the

> forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Talley v. Chanson*, No. 13-CV-1238-CAB(BLM), 2014 WL 12167639, at *3 (S.D. Cal. May 7, 2014) (quoting *College Source Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011)). A plaintiff has the burden of satisfying the first two prongs of the test, then the burden shifts to a defendant to "present a compelling case" that would render jurisdiction unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

As to the first prong, Plaintiff has adequately pled that the Lundeens as the alter ego of Aspen Hills agreed to the protections of California law by agreeing that California law would govern their Agreement. (Doc. No. 3 ¶¶ 15, 17.) Next, the Lundeens concede that Plaintiff's allegations under the California Uniform Voidable Transactions Act ("UTVA") meet the required showings of purposeful availment and relation to the forum under the "calder-effects" test.[5] (Doc. No. 16-1 at 10.) Thus, finding the first two elements satisfied, the Court must now consider whether it is reasonable to exercise personal jurisdiction over the Lundeens.

In determining reasonableness, the Court must consider:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

---

[5] The Calder effects test is a three-part test requiring that the defendants have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002). The court must balance and weigh all seven factors; none is dispositive. *Ziegler v. Indian River Cty.,* 64 F.3d 470, 475 (9th Cir.1995).

### i. *Purposeful Injection*

The factor of purposeful interjection is analogous to the purposeful direction analysis. *Sinatra v. Nat. Enquirer, Inc.,* 854 F.2d 1191, 1199 (9th Cir.1988). Because the Court has already determined that the Lundeens purposefully directed their activities toward California through the UTVA, the Lundeens in turn, meet the purposeful injection standard.

### ii. *The Burden of Defending in the Forum*

Unless the inconvenience to the defendants of litigating in the forum state is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction. *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1323 (9th Cir.1998) (internal quotation marks and citation omitted). The Lundeens are Iowa citizens, currently participating in an Iowa receivership action. (Doc. No. 16-1 at 11.) Thus, the Lundeens argue that the time, worry, discovery, and legal fees in defending against Plaintiff weighs heavily in their favor. (*Id.*) In opposition, Plaintiff contends that the burden imposed on the Lundeens needs to be balanced in light of the corresponding burden on it. (Doc. No. 24 at 19.)

First, the Court notes that cases have been inconsistent in determining whether a corresponding court should take into account the burden on the plaintiff in bringing the claims against the defendant. *Compare Pac. Atlantic Trading Co. v. M/V Main Exp.*, 758 F.2d 1325, 1330 (9th Cir. 1985) ("[T]he burden on the defendant is the primary concern" and thus the possible burden on the plaintiff does not dilute the strength of this factor), *with Sinatra*, 854 F.2d at 1199 ("We examine the burden on defendants in light of the corresponding burden on the plaintiff.") (citation omitted). However, the Court need not resolve this disconnect today, because the Lundeens would not be so inconvenienced by defending this action in San Diego as to "constitute a deprivation of due process." *Caruth*

*v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128–29 (9th Cir. 1995). The Court is sensitive to the burden on the Lundeens as individuals living in Iowa and having to litigate in California. Nonetheless, this slight inconvenience is not enough to "overcome clear justifications for the exercise of jurisdiction." *Id*. As the Ninth Circuit stated in 1996, "in this era of fax machines and discount air travel requiring [Defendants] to litigate in California is not constitutionally unreasonable." *Panavision Int'l*, 141 F.3d at 1323. Therefore, this factor does not favor the Lundeens.

### iii. The Extent of Conflict with the Sovereignty of Iowa

The Lundeens argue that this case is in direct conflict with the express order of the Iowa District Court in the Receivership Action in Iowa. (Doc. No. 16-1 at 12.) Plaintiff responds that its personal claims against the Lundeens do not fall within the asserted scope of the Receivership Order as its claims are asserted under California law. (Doc. No. 24 at 19.)

"Normally, a court should refrain from exercising jurisdiction when another state has expressed a substantially stronger sovereignty interest and that state's courts will take jurisdiction." *Raffaele v. Compagnie Generale Maritime*, 707 F.2d 395, 398 (9th Cir. 1983). "Litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist." *Sinatra*, 854 F.2d at 1199.

While the Lundeens have presented evidence that the Iowa state court has expressed that Plaintiff was to first obtain leave of court before filing a lawsuit, the Lundeens have not demonstrated the Iowa state court's particular interest in adjudicating this suit, specifically the fraudulent transfer claims against them. Additionally, this factor is not as significant in cases involving only United States citizens because conflicting policies between states are resolved through choice of law analyses and not through loss of jurisdiction. *See Brand v. Menlove Dodge,* 796 F.2d 1070, 1076 n.5 (9th Cir. 1986). Plaintiff's claims per the Ingredient Supply Agreement are to be adjudicated according to California law. Accordingly, this factor weighs in favor of a finding of reasonableness.

*iv.*     *The Forum State's Interest in Adjudicating the Dispute*

California's interest in adjudicating the dispute weighs in favor of finding jurisdiction reasonable. "California maintains a strong interest in providing an effective means of redress for its residents tortuously injured." *Metzger v. Temple of the Ancient Dragon, Inc.*, No. 16-CV-1299-WQH (NLS), 2016 WL 7242102, at *8 (S.D. Cal. Dec. 15, 2016). The complaint alleges that the Lundeens intentionally and negligently caused harm to Plaintiff by causing Aspen Hills to transfer money to them to avoid Aspen Hills's purported liabilities and obligations to Plaintiff. (Doc. No. 3 ¶¶ 16, 17.) California has an interest in providing a means of redress—a means that would be harmed without Plaintiff's protection under California's laws and courts—for its residents regardless of an ongoing receivership action. Therefore, in determining whether it is reasonable to exercise jurisdiction, this factor weighs in favor of reasonableness.

*v.*     *The Most Efficient Judicial Resolution of the Controversy*

As previously mentioned, the ongoing Iowa receivership proceedings do not present a resolution to the personal claims that Plaintiff asserts against the Lundeens. This Court also notes that this Court is now familiar with the claims, facts, and parties involved. Further, the California forum is more convenient for Plaintiff, a corporation with its principal place of business in San Diego. (Doc. No. 3 ¶¶ 9, 10.) Accordingly, this factor weighs against the Lundeens.

*vi.*     *The Importance of the Forum to the Plaintiff's Interest in Convenient and Effective Relief*

The Lundeens submit that effective relief can only come through the receivership, stating that "[n]o assets of Aspen Hills, including any possible claw back from the Lundeens, will come to Arctic Zero outside the Receivership process and Iowa court order." (Doc. No. 16-1 at 13.) As already discussed in great length the Lundeens have not shown that Plaintiff's personal claims against them can be more effectively remedied elsewhere. Accordingly, the Court finds this factor weighs in favor of Plaintiff.

///

Lastly, the Court supposes whether an alternative forum exists. This factor becomes relevant only "when the forum state is shown to be unreasonable." *Corporate Inv. Bus. Brokers v. Melcher,* 824 F.2d 786, 791 (9th Cir. 1987). The Lundeens have made no showing that litigating in California would be unreasonable. Therefore, the Court does not address this factor.

After considering the relevant factors, the Court concludes that the Lundeens have failed to present a compelling case that this Court's exercise of jurisdiction in California would be unreasonable. Accordingly, the Lundeens' motion to dismiss for lack of personal jurisdiction is **DENIED**.

## E.     Alter Ego

The Lundeens also argue that the alter ego allegations against them are conclusory and lacking supporting factual statements pursuant to Rule 9(b) and 12(b) of the Federal Rules of Civil Procedure. (Doc. No. 16-1 at 13–17.) Plaintiff argues that its complaint is sufficient to show that a unity of interest existed between the Lundeens and Aspen Hills. (Doc. No. 24 at 24.)

"Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations." *Sonora Diamond Corp. v. Superior Court,* 83 Cal. App. 4th 523, 538 (2000). The *Sonora Diamond* court explained, "[t]he alter ego doctrine prevents individuals or other corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds." *Id.* Additionally, the alter ego doctrine serves to bypass the corporate entity to ensure that an injustice does not take place. *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1115 (C.D. Cal. 2003). Its "essence . . . is that justice be done . . . [and] [t]hus the corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice so require." *Mesler v. Bragg Mgmt. Co.,* 39 Cal.3d 290, 301 (1985) (internal quotations omitted).

For the doctrine to be invoked, a plaintiff must allege two elements: "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Id*. at 300.

Based on the allegations present in the complaint, the Court finds, at least for purposes of the instant motion, that Plaintiff has sufficiently alleged that the Lundeens are the alter egos of Aspen Hills.[6] While the Court is not persuaded by Plaintiff's argument stemming from Thomas Lundeen's signature on the Ingredient Supply Agreement, (Doc. No. 24 at 24), the allegations of fraud transfers by the Lundeens as insiders, (Doc. No. 3 ¶¶ 36–49), demonstrates that the Lundeens "operated the corporation as a mere business tool or conduit for [themselves]." *Wimbledon Fund, SPC v. Graybox LLC*, CV 15-6633-CAS (AJWx), 2016 WL 7444709, at *10 (C.D. Cal. Aug. 31, 2016). Further, the complaint alleges the Lundeens were both officers, co-owners, agents, representatives, and alter egos of Aspen Hills. (Doc. No. 3 ¶¶ 15, 17.) Additionally, the complaint also contends that the Lundeens "dominated, influenced and controlled Aspen Hills as well as the business, property, and affairs thereof." (*Id*. ¶ 50.) Finally, the complaint contains allegations that if proven, would show the Lundeens withdrew a significant portion, allegedly nearly all of Aspen Hills's assets, leaving the company insolvent. (*Id*. ¶¶ 90–92.)

Further, the complaint asserts facts sufficient to show that recognition of the corporate form would result in injustice. The alleged dividends Aspen Hills transferred to the Lundeens during the year 2016 totaled $1,781,700. (*Id*. ¶ 44.) Between August 1, 2016 and December 23, 2016 alone, the amounts purportedly transferred to the Lundeens amounted to $831,700. (*Id*. ¶ 44.) In comparison, the amount transferred to the Lundeens

---

[6] Both parties agree that Federal Rule of Civil Procedure 9(b)'s heightened pleading standard applies to Plaintiff's veil piercing claims based on fraud. (Doc. No. 16-1 at 15; Doc. No. 24 at 23.) Even under Rule 9(b), the Court finds Plaintiff's allegations of alter ego sufficient.

during 2014 and 2015, the period before the admitted listeria contamination and recall, was allegedly $600,000 and $756,669, respectively. (*Id*. ¶ 45.)

Additionally, Plaintiff also alleges facts to support the contentions that Aspen Hills knew of its liabilities to Plaintiff at the time of the transfers. On September 21, 2016, Thomas Lundeen notified Plaintiff by written correspondence that on September 20, 2016, Aspen Hills had initiated a recall of its products because of the presence of Listeria. (*Id*. ¶ 28.) On October 12, 2016, Mr. Lundeen sent a personal note apologizing to Plaintiff explaining that Aspen Hills's failure to comply with safety standards had necessitated the recall. (*Id*. ¶ 30.) On December 23, 2016, Plaintiff provided documentation to Mr. Lundeen which showed the costs it incurred as a result of the recall, amounting to at least $572,375. (*Id*. ¶ 33.) In this case, recognizing the corporate form and allowing the Lundeens to transfer Aspen Hills's assets out of Plaintiff's reach when Plaintiff may have had an interest in it would produce an inequitable result.

Accordingly, the Court finds that Plaintiff adequately alleges that the Lundeens are the alter egos of Aspen Hills. Thus, the Lundeens' motion to dismiss is **DENIED**.

F.    Preliminary Injunction

On a final note, the Court addresses Plaintiff's request for a preliminary injunction in its prayer for relief. (Doc. No. 3 at 15.) According to well-established principles of equity, a plaintiff seeking a permanent injunction must follow a four-factor test before a court may grant such relief. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). A plaintiff must demonstrate "(1) that it has suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id*.; *see e.g.*, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–13 (1982). As Plaintiff has made no such showing under these four factors, the Court **DENIES** its request for a preliminary injunction. The Court does this **WITHOUT PREJUDICE** so that Plaintiff may file an appropriate motion if it so desires.

## **CONCLUSION**

As explained more fully above, the Court **DENIES** Aspen Hills and the Lundeens' motions to stay and **DENIES** their motions to dismiss. This Court retains jurisdiction and this case will follow its normal course.

**IT IS SO ORDERED**.

Dated: November 20, 2017

Hon. Anthony J. Battaglia
United States District Judge

17-cv-00459-AJB-JMA